UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA
DIVISION

Carmelo Quirindongo Gonzalez
Plaintiff,

**Civil Action No.:** _____

v.

United Wholesale Mortgage, LLC,
Defendant.

# COMPLAINT
# DEMAND FOR DISCOVERY AND JURY TRIAL

**DEMAND FOR JURY TRIAL**; WAIVER, Fla. R.Civ. P. 1.430.
Rule 1.430 - DEMAND FOR JURY TRIAL; WAIVER (a) Right Preserved. The right
of trial by jury as declared by the Constitution or by statute shall be preserved to the
parties inviolate. Rule 38, Right to a Jury Trial; Demand for trial.

## Fla. R. Civ. P. 1.280 - GENERAL PROVISIONS GOVERNING DISCOVERY.

I respectfully request the indulgence of this court as I am not schooled in law. This is
provided by the precedent set by Haines vs. Kerner at 404 U.S. 519. Plaintiff is
proceeding without the benefit of legal counsel. Additionally, I am not a practicing
attorney, nor has I been trained in the complex study of law. As such, "plaintiff" pro se
papers are to be construed liberally. See Haines v. Kerner, 404 U.S. 519-20, (1972). "A
pro se litigant should be given a reasonable opportunity to remedy defects in his [or her]
pleadings if the factual allegations are close to stating a claim for relief." Hall v. Bellmon,
935 F. 2d 1106, 1110 (10th Cir.1991). Accordingly, such pleadings should be held to a
less stringent standard than those drafted by licensed, practicing attorneys.

## INTRODUCTION

This is an action for misrepresentation, constructive fraud, and injunctive and declaratory
relief arising out of Defendant's alleged material omissions and false representations
related to Plaintiff's mortgage loan and impending foreclosure action filed in Case No.
2023CA006848, Polk County, Florida.
Plaintiff seeks to stop a foreclosure sale scheduled for June 24, 2025, on grounds that the
underlying mortgage obligation has been fully satisfied through investor funds, insurance
claims, securitization proceeds, or government guarantees, and that Defendant failed to
disclose these facts to Plaintiff.

1

**PARTIES**

Plaintiff, Carmelo Quirindongo, is an individual residing in Polk County, Florida. Defendant, United Wholesale Mortgage, LLC ('UWM'), is a Michigan-based mortgage lender and loan servicer registered to do business in the state of Florida.

**JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1332 (diversity), as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district.

**FACTUAL ALLEGATIONS**

1. This is an action and amount for damages that exceed $280,000.00.

2. On or about November 21, 2019, Plaintiff executed a promissory note (security instrument, **financial asset)** and mortgage in favor of Mortgage Electronic Registration Systems, INC. as Nominee for United Wholesale Mortgage and assigned to United Shore Financial Services, LLC D/B/A United Wholesale Mortgage, LLC for real property located in Polk County, Florida.

3. Property location 256 Grouper Ct, Kissimmee, FL 34759, Book 11053, Page 0966 and MIN # 100032412193906721.

4. Subject property is a single-Family house, Lot 21, Block 1058, POINCIANA NEIGHBORHOOD 4, VILLAGE 7, according to the map or plat thereof as recorded in Plat Book 53, Page 4, Public Records of Polk County, Florida.

5. United Wholesale Mortgage, LLC misrepresented that Plaintiff's note was a debt obligation when it was a **financial asset** that funded the alleged loan, per security instrument. (**Exhibit A**, contract loan documents)

6. Defendant initiated foreclosure in state court (Case No. 2023CA006848), alleging Plaintiff defaulted on the mortgage obligation. (**Exhibit B,** foreclosure complaint)

7. United Wholesale Mortgage, LLC securitized the loan into a trust via SEC filings, receiving payment from investors, insurance, or government backing [specify evidence]. (**Exhibit C,** SEC filing)

8. Plaintiff alleges that United Wholesale Mortgage, LLC, its agents, or investors have already received full payment for the mortgage obligation through one or more of the following sources.

   -Monetization of Plaintiff's promissory note,
   -insurance payouts, Credit default swaps or guarantees;
   - Government-sponsored entities (e.g., Fannie Mae, Freddie Mac);
   - Mortgage-backed securitization.

9. Plaintiff alleges that United Wholesale Mortgage, LLC failed to disclose the securitization of the mortgage loan and misrepresented that Plaintiff owed a balance, even though the obligation had been discharged or offset by investor proceeds or third-party payments.

10. Plaintiff further alleges the mortgage was executed under false pretenses and nondisclosure, including:

- Misleading Plaintiff into believing that United Wholesale Mortgage, LLC was the actual lender/funding source;
- Omitting that the promissory note itself would be treated as a negotiable instrument and sold to fund the transaction;
- Failing to disclose that Plaintiff's mortgage would be pooled into a securitized trust.

11. These omissions and representations induced Plaintiff to enter into the mortgage agreement, constituting constructive fraud and misrepresentation.

12. On or about November 16, 2021, United Wholesale Mortgage, LLC falsely stated Plaintiff owed $2,512.18 and on or about September 1, 2021, owed a total of $18,958.36 despite payments, leading to the April 24, 2025, foreclosure judgment (Case No. 2023CA006848). ((**Exhibit** D, NOTICE)

13. United Wholesale Mortgage, LLC received full payment for the obligation via Plaintiff Note (**financial asset**), investor funds, insurance claims, or government back yet United Wholesale Mortgage, LLC continued to **misrepresent balance as due and owing**. (SEC information attached)

14. United Wholesale Mortgage, LLC publicly available 10k filed with the U.S. Securities and Exchange Commission (SEC). (**See** United Wholesale Mortgage, LLC **Attached**, SEC filing)

15. Plaintiff relied on United Wholesale Mortgage, LLC misrepresentations by making payments of $1,275.25 monthly and not contesting foreclosure, which is causing financial loss and imminent loss of the home.

16. United Wholesale Mortgage, LLC **lacks legal standing to foreclosure and must cease all foreclosure efforts immediately.** United Wholesale Mortgage, LLC

have **no "standing" to enforce the terms of alleged mortgage** or loan Agreement, security agreement with Plaintiff Carmelo Gonzalez.

17. As a result of Defendant unlawful actions, Plaintiffs suffered emotional distress, anxiety, and damage to their creditworthiness.

18. Defendant continued collection efforts, including the false threats and misrepresentations, caused Plaintiff significant financial and emotional harm.

19. Plaintiff Carmelo Gonzalez is entitled to damages as a result of misrepresentations, False or misleading representations.

20. The documentary evidence (Exhibits A, B, C and D) and Plaintiff sworn statements establish Defendant **FRAUD, misrepresentation and the resulting harm**.

21. Statements 1-19, UNAUTHORIZED AND FRAUDULENT DEBTS COLLECTION ACTIVITIES. I have NOT seen any evidence to support any allegations to the contrary, and I believe no such evidence exists.

## COUNT I – CONSTRUCTIVE FRAUD

22. Plaintiff re-alleges paragraphs 1 through 21 as if fully set forth herein.

23. Defendant owed Plaintiff a duty of full disclosure regarding the true nature and structure of the mortgage, note, loan, chain of assignment and securitization.

24. United Wholesale Mortgage, LLC, as lender, had a confidential relationship by controlling loan terms and disclosures.

25. United Wholesale Mortgage, LLC breached its duty by not disclosing securitization, chain of title and misrepresenting the note's role, inducing Plaintiff to sign.

26. United Wholesale Mortgage, LLC engaged in dishonest and wrongful behavior that resulted in an **unjust judgment**. This allows Carmelo Gonzalez to ask the court for a permanent injunctive for the default judgment based on these serious issues here.

27. **Fraud,** a party may claim that fraud occurred if the opposing party intentionally misrepresented facts or concealed information to deceive the court, resulting in a judgment that was unfair.

28. Plaintiff suffered harm (foreclosure, financial and emotion loss). Plaintiff demands damages and costs.

29. Defendant breached this duty by omitting material facts that were within its knowledge and not reasonably discoverable by Plaintiff.

30. As a result, Plaintiff was misled to his detriment, and the foreclosure proceeding is based on a misrepresented obligation.

31. Plaintiff was wrongfully accused of default and breaching mortgage and note agreement or contract.

32. These actions were material to the judgment, as the United Wholesale Mortgage, LLC conduct directly affected the fairness and outcome of the trial. Had the Court been aware of this fraudulent conduct, the judgment would have been different.

33. The lawsuit filed by alleged Plaintiff lacked probable cause, were based on false allegations, and were intended to harass and extort alleged Defendants, meeting the elements of malicious prosecution.

## COUNT II – MISREPRESENTATION

34. Plaintiff re-alleges paragraphs 1 through 21.

35. **This is an action for misrepresentation** arising from Defendant false statements and false representations made to Plaintiff regarding the alleged mortgage debt, financial obligations, balance, interest rate or payment schedule, mortgage loan, payoff, insurance, securitization, ownership, status of the mortgage account, balance sheet, Debt acquisition Disclosures and **Unlawful Collection.**

36. Defendant intentionally or negligently misrepresented the principal sum of $151,379.53 and outstanding balance of $18,958.36 the loan obligation.

37. United Wholesale Mortgage, LLC knew these statements were false, per SEC filings, trust documents.

38. United Wholesale Mortgage, LLC intended Plaintiff to rely by continuing payments or not defending foreclosure.

39. **Any agreement that was not fully disclosed to Plaintiff Carmelo Gonzalez is void. Such a contract or agreement is null and void, as if it never existed at all, and all to return to the lawful owner plus reasonable money and interest.**

40. Plaintiff justifiably relied, suffering damages of $280,000.00 and foreclosure. Plaintiff demands compensatory damages and costs.

41. Defendant's misrepresentations caused Plaintiff to suffer economic harm and face foreclosure despite the loan having been satisfied through securitization or third-party payments, insurance claim.

## COUNT III – DECLARATORY RELIEF (28 U.S.C. § 2201)

42. Plaintiff re-alleges all preceding paragraphs.

43. United Wholesale Mortgage failing to adequately process the Cash Collateral or disclose critical information that would have enabled Plaintiff to act on their legal rights.

44. The purported loan is actually based on Carmelo Gonzalez own credit and financial signature that United Wholesale Mortgage essentially monetizes Carmelo Gonzalez security instrument as an asset with Federal Reserve discount window but fails to disclose these details, to Carmelo Gonzalez.

45. In First National Bank of Montgomery v. Jerome Daly (1969), the court ruled that the bank did not lend its own funds thus instead monetized the borrower's promissory note. This failure of consideration invalidated the contract. (**Exhibit D, Attached, Jerome Daly case and Affidavit of Todd**)

46. Modern technology enables the manipulation or forgery of signatures, and only the original documents can establish authenticity by United Wholesale Mortgage, LLC. Plaintiff moves to suppress all copies of the contracts and accounting unless the United Wholesale Mortgage, LLC can produce the original for inspection.

47. **The agreement is void and Carmelo Gonzalez is released from further obligations. If the initial breach is material, the other party to the contract is excused from performing his contractual obligations.**

48. Plaintiff seeks a declaration that:
    - The mortgage debt has been discharged, offset, or otherwise satisfied;
    - United Wholesale Mortgage, LLC lacks standing to enforce the mortgage due to its securitization and lack of actual pecuniary interest
    - **The foreclosure sale should be stayed pending resolution of these issues.**

49. **"Fraud vitiates the most solemn contracts, documents and even judgments" [U.S. vs. Throckmorton, 98 us 61, at pg.65].**

## COUNT IV – INJUNCTIVE RELIEF

50. Plaintiff re-alleges all preceding paragraphs.

51. **United Wholesale Mortgage illegally collected the alleged mortgage debt on the account and took monthly payments from Plaintiff Carmelo Gonzalez on a mortgage debt that Plaintiff do not owe, unjust enrichment.**

52. An irreparable injury will occur if the foreclosure sale scheduled for June 24, 2025, proceeds.

53. Plaintiff has a likelihood of success, as United Wholesale Mortgage, LLC fraud undermines the foreclosure judgment.

54. Plaintiff faces irreparable harm (loss of home) without an injunction. Damages are inadequate, as the home is unique.

55. Public interest favors preventing wrongful foreclosure. Plaintiff requests a temporary and permanent injunction stopping the June 24, 2025, sale.

56. Plaintiff lacks an adequate remedy at law, and injunctive relief is necessary to preserve the status quo and prevent unjust enrichment or wrongful foreclosure.

57. Plaintiff requests a temporary restraining order and preliminary injunction enjoining Defendant from proceeding with the foreclosure sale until this Court resolves the legal and factual disputes.

58. As a result of Defendant actions, Plaintiff is entitled to actual damages, statutory damages, and court fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, please consider the said contract paid in full and immediately release any and all encumbrances on account # 0122228208 and record Mortgage Satisfaction with Polk County, Florida. Plaintiff's demand **Immediate forensic accounting of all transactions** related to Plaintiff Carmelo Gonzalez alleged mortgage loan debt obligation (ex: GAAP, Provide Pooling and Servicing Agreements (PSA). **Return of any misappropriated funds, original promissory note and mortgage with no alteration and Treble damages for unjust enrichment.** Plaintiffs Carmelo Gonzalez is claiming all credit due on the account, including off-balance sheet ledgering. Plaintiff Carmelo Gonzalez requests this Court to grant judgment and relief against United Wholesale Mortgage, LLC under Counts I, II III, IV and to this Court's own equity powers.

    a. Compensatory damages for financial losses;
    b. Grant a Temporary Restraining Order and Preliminary Injunction stopping the foreclosure sale;
    c. Declare that Plaintiff's mortgage obligation has been satisfied or misrepresented;
    d. Award compensatory and punitive damages for fraud and misrepresentation;

e. Award costs, fees, and such other relief as the Court deems just and proper

DEMAND FOR JURY TRIAL. Plaintiff demands a trial by jury on all issues so triable

Respectfully submitted,

By: Carmelo Quirindongo Gonzalez sui juris
All Rights Reserved, without Recourse
melloq60@gmail.com

The Undersigned, Carmelo Gonzalez do herewith declare, state and say that Carmelo
Gonzalez, issue this with sincere intent in truth, that I, Carmelo Gonzalez the undersigned
is competent by stating the matters set forth herein, that the contents are true, correct,
complete, and certain, admissible as evidence, reasonable, not misleading, and by our
best knowledge, by me, the undersigned.

The use of a notary below is for identification only and not for entrance into any foreign
jurisdiction

## ACKNNOWLEDGMENT

Polk County              )
                         )  ss.       JURAT
Florida Republic         )

On this 22nd day of May _____, 2025, before me, the undersigned, a
Notary Public in and for Polk County, personally appeared the above-signed, known to
me to be the one whose name is signed on this instrument, and has acknowledged to me
that he/she has executed the same.

Signed: _____

Notary name: Terry-Ann Taylor-Beckf.

My commission expires: 4/11/26

TERRY-ANN TAYLOR-BECKFORD
Notary Public
State of Florida
Comm# HH251826
Expires 4/11/2026

(NOTARY SEAL)

# EXHIBIT A

Composite Exhibit "A"

# NOTE



| NOVEMBER 21, 2013 | ST. PETERSBURG, | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

256 GROUPER CT, KISSIMMEE, FL 34759
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $155,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNITED WHOLESALE MORTGAGE. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.375%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on JANUARY 1, 2020. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1, 2049, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 986, NEWARK, NJ 07184-0986 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $869.08.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

FLORIDA FIXED RATE NOTE —Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
21919.9                                                                            Form 3210   1/01 (page 1 of 3 pages)

then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

FLORIDA FIXED RATE NOTE –Single Family– Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**ETS** 21019.9                                                                 Form 3210  1/01 (page 2 of 3 pages)

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- BORROWER - CARMELO QUIRINDONGO

[Sign Original Only]

Individual Loan Originator: ALEX DE JESUS DIAZ, NMLSR ID: NMLS #
Loan Originator Organization: MARYMONT FINANCIAL SERVICES, NMLSR ID: NMLS #
Loan Originator Organization (Creditor): UNITED WHOLESALE MORTGAGE, NMLSR ID: NMLS #

FLORIDA FIXED RATE NOTE—Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 21919.9                                                                Form 3210   1/01 (page  1  of  3  pages)

INSTR # 2019250586
BK 11053 Pgs 0966-0982 PG(s)17
11/25/2019 02:12:07 PM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 146.00
MTG DOC 543.20
INTANGIBLE 310.40

After Recording Return To:
UNITED SHORE FINANCIAL SERVICES,
LLC
585 SOUTH BOULEVARD E
PONTIAC, MI 48341

ATTN: POST CLOSING MANAGER

This Document Prepared By:
SCOTT SLEZAK
UNITED WHOLESALE MORTGAGE
585 SOUTH BOULEVARD E
PONTIAC, MI 48341
(800) 981-8898

[Space Above This Line For Recording Data]

# MORTGAGE

QUIRINDONGO
Loan #: 1219390672
Serv #: 0122228208
MIN: 100032412193906721
MERS Phone: 1-888-679-6377
PIN: 28-28-02-934710-115210

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 21, 2019, together with all Riders to this document.

(B) "Borrower" is CARMELO QUIRINDONGO GONZALEZ AKA CARMELO QUIRINDONGO, A MARRIED MAN, JOINED BY HIS WIFE, ARLENE JOYCE WITTER. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is UNITED WHOLESALE MORTGAGE. Lender is a LLC organized and existing under the laws of MI. Lender's address is 585 SOUTH BOULEVARD E, PONTIAC, MI 48341.

(E) "Note" means the promissory note signed by Borrower and dated NOVEMBER 21, 2019. The Note states that Borrower owes Lender ONE HUNDRED FIFTY-FIVE THOUSAND TWO HUNDRED AND 00/100 Dollars (U.S. $155,200.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 1, 2049.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 317.35                            Page 1 of 13                            Form 3010 1/01



0122228208                                                                          1219390672

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☒ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY of POLK:
SEE ATTACHED
which currently has the address of 256  GROUPER  CT, KISSIMMEE, Florida 34759 ("Property Address"):

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**KX**  31735                                  Page  2  of  13                              Form 3010 1/01

0122228208

1215390672

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**XX** -3173S             Page 3 of 13                      Form 3010 1/01



0122228208                                                                      1219390672

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EXX  317.35                                          Page 4 of 13                                        Form 3010 1/01



Stacy M. Butterfield  POLK
CFN# 2019250586 OR BK 11053  PG 969 Pgs 0966-0982 11/25/2019 02:12:07 PM

RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**KM** 31735                                          Page 5 of 13                                          Form 3010 1/01



0122228208                                                             1219390672

additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at



0132228208                                                                    1219390672

the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**XX** 3173.5                          Page 7 of 13                          **Form 3010 1/01**



loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**ЕХ** 31735                                                    Page 8 of 13                                                    Form 3010 1/01



0122228208                                                                                    1219390672

the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

FLORIDA -Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**XX**  317.35                                          Page 9 of 13                                    Form 3010 1/01



0122228208                                                                                          1219390672

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

FLORIDA -Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**⬛⬛** 31735                                      Page 10 of 13                                    Form 3010 1/01



0122228208                                                                                          1219390672

shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances:

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
ᴣᴣ  317.35                                       Page 11 of 13                                       Form 3010 1/01



0132228208                                                                              1219390672

gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
ⅢⅢ  317.35                                    Page 12 of 13                                Form 3010 1/01



0122228200                                                                    1219390672

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  11/21/19

- BORROWER - CARMELO QUIRINDONGO - DATE -

_____  11/21/19

ARLENE JOYCE WITTER - DATE -

Borrower's Mailing Address: 9430 LAKE VIEW RD, UNION CITY, GA 30291

Signed, sealed and delivered in the presence of:

_____                    _____
Witness,                                            Witness  Teresa C. Tavere

Maria Tabora  [Space Below This Line For Acknowledgment]

STATE OF Florida

COUNTY OF POLK Orange.

The foregoing instrument was acknowledged before me this November 21, 2019, by CARMELO QUIRINDONGO GONZALEZ AKA CARMELO QUIRINDONGO, A MARRIED MAN, JOINED BY HIS WIFE, ARLENE JOYCE WITTER, who is personally known to me or who has produced Valid Photo ID as identification.

[Notary stamp:]
TERESA C TAVERA
...
Commission March 28, ...

_____
Notary Public

My Commission Expires: _____

Individual Loan Originator: ALEX DE JESUS DIAZ, NMLSR ID: NMLS # 1674383
Loan Originator Organization: MARYMONT FINANCIAL SERVICES, NMLSR ID: NMLS # 1871425

Loan Originator Organization (Creditor): UNITED WHOLESALE MORTGAGE, NMLSR ID: NMLS # 3038

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 317.35                           Page 13 of 13                    Form 3010 1/01

# PLANNED UNIT DEVELOPMENT RIDER

QUIRINDONGO
Loan #: 1219390672
Serv. #: 0122228208
MIN: 100032412193906721

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **21ST** day of **NOVEMBER, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **UNITED WHOLESALE MORTGAGE,** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 256 GROUPER CT, KISSIMMEE, FL 34759
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY (the "Declaration"). The Property is a part of a planned unit development known as

### POINCIANA
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security

**MULTISTATE PUD RIDER-** Single Family -Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
   34.29                                            **Form 3150 1/01** *(page 1 of 3 pages)*

0122228208                                                    1219390672

Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituents Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of

**MULTISTATE PUD RIDER-** Single Family -Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
ⓧ 34.29                                                    Form 3150 1/01 *(page 2 of 3 pages)*

0122228208                                                          1219390672

the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

    **F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

- BORROWER - CARMELO QUIRINDONGO - DATE -

ARLENE JOYCE WITTER - DATE -

**MULTISTATE PUD RIDER-** Single Family -Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
34.29                                              Form 3150 1/01 *(page 3 of 3 pages)*

Stacy M. Butterfield POLK
CFN# 2019250586 OR BK 11053 PG 982 Pgs 0966-0982 11/25/2019 02:12:07 PM

# EXHIBIT A

# EXHIBIT B

Filing # 187217500 E-Filed 12/01/2023 05:43:28 PM

IN THE CIRCUIT COURT FOR THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

UNITED WHOLESALE MORTGAGE, LLC

        Plaintiff(s),                       CASE NO.:

vs.

CARMELO QUIRINDONGO A/K/A CARMELO
QUIRINDONGO GONZALEZ A/K/A CARMELO
GONZALEZ; ARLENE JOYCE WITTER;
THE UNKNOWN SPOUSE OF CARMELO QUIRINDONGO
A/K/A CARMELO QUIRINDONGO GONZALEZ A/K/A
CARMELO GONZALEZ; ASSOCIATION OF POINCIANA
VILLAGES, INC; COCONUT FUNDING CORPORATION;
SUNNOVA SLA MANAGEMENT LLC; THE UNKNOWN
TENANT IN POSSESSION

        Defendant(s).

_____/

## VERIFIED COMPLAINT TO FORECLOSE MORTGAGE

COMES NOW the Plaintiff, UNITED WHOLESALE MORTGAGE, LLC by and through
the undersigned legal counsel, and sues Defendants, CARMELO QUIRINDONGO A/K/A CARMELO
QUIRINDONGO GONZALEZ A/K/A CARMELO GONZALEZ; ARLENE JOYCE WITTER; THE
UNKNOWN SPOUSE OF CARMELO QUIRINDONGO A/K/A CARMELO QUIRINDONGO
GONZALEZ A/K/A CARMELO GONZALEZ; ASSOCIATION OF POINCIANA VILLAGES, INC;
COCONUT FUNDING CORPORATION; SUNNOVA SLA MANAGEMENT LLC; THE
UNKNOWN TENANT IN POSSESSION, and as grounds therefore, states:

    1.    This is an action to foreclose a mortgage on real property located in Polk County,
Florida. Plaintiff is holder of the note secured by the Mortgage. The Plaintiff is registered in the State of
Florida or is otherwise authorized to do business in the State of Florida.

    2.    On or about November 21, 2019, CARMELO QUIRINDONGO A/K/A CARMELO

1

TDP FILE NO: 23-001886

QUIRINDONGO GONZALEZ A/K/A CARMELO GONZALEZ executed and delivered a note in the original principal amount of $155,200.00 in favor of UNITED WHOLESALE MORTGAGE. On or about November 21, 2019, CARMELO QUIRINDONGO A/K/A CARMELO QUIRINDONGO GONZALEZ A/K/A CARMELO GONZALEZ and ARLENE JOYCE WITTER executed and delivered a Mortgage securing payment of the Note in favor of Mortgage Electronic Registration Systems, Inc. as mortgagee, as nominee for United Wholesale Mortgage, which was secured by real property described in the mortgage, together with all existing and future improvements, fixtures and structures, which was subsequently assigned to United Shore Financial Services, LLC D/B/A United Wholesale Mortgage, its successors and assigns. The property is described as follows:

LOT 21, BLOCK 1058, POINCIANA NEIGHBORHOOD 4, VILLAGE 7, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 53, PAGE 4, PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

3.     The mortgage was recorded November 25, 2019, in Official Records Book 11053, Page 0966; and the assignment of mortgage to United Shore Financial Services, LLC D/B/A United Wholesale Mortgage, its successors and assigns was recorded on January 19, 2022, in Official Records Book 12078, Page 1361; all of the Public Records of Polk County, Florida. A copy of the note, mortgage, and assignment(s) of mortgage are attached hereto and made a part hereof as Composite Exhibit "A."

4.     Plaintiff has performed its obligations as required by the note and mortgage described above and there has been a default under the terms of the note and mortgage due to a failure to make the payment due on October 1, 2021, and all subsequent payments. CENLAR FSB on behalf of Plaintiff provided the appropriate Notice of Default and Right to Cure as required by the mortgage, if any, prior to initiating this action. A copy of the Notice of Default and Right to Cure is attached hereto

TDP FILE NO. 23-001886

2

as Exhibit "B."

5.    Plaintiff declares the full amount payable under the note and mortgage to be due.

6.    Plaintiff has performed all conditions precedent to bring this action as required by law and the terms of the note and mortgage.

7.    There is owed the principal sum of $151,379.53, plus an additional principal balance of $18,958.36, plus interest from September 1, 2021, plus any and all late fees, unpaid property taxes, force-placed insurance, unpaid legal fees and costs, and other related loan items.

8.    CARMELO QUIRINDONGO A/K/A CARMELO QUIRINDONGO GONZALEZ A/K/A CARMELO GONZALEZ appears to own the subject property. Any interest so claimed is inferior to that of the Plaintiff's.

9.    THE UNKNOWN SPOUSE OF CARMELO QUIRINDONGO A/K/A CARMELO QUIRINDONGO GONZALEZ A/K/A CARMELO GONZALEZ may claim an interest in the subject property by virtue of marriage to CARMELO QUIRINDONGOA/K/A CARMELO QUIRINDONGO GONZALEZ A/K/A CARMELO GONZALEZ and occupancy of the subject property, but any interest so claimed is inferior to that of Plaintiff.

10.    ASSOCIATION OF POINCIANA VILLAGES, INC may claim an interest in the subject property by virtue of that certain Homeowners Association Lien dated May 7, 2021, and recorded on May 14, 2021 in Official Records Book 11716, Page 1936, and by virtue of that certain Lis Pendens dated November 8, 2022, and recorded on November 9, 2022 in Official Records Book 12480, Page 1527, of the Public Records of Polk County, Florida, but any interest so claimed is inferior to that of Plaintiff. A copy of the referenced Homeowners Association Lien and Lis Pendens is attached hereto as Composite Exhibit "C."

11.    COCONUT FUNDING CORPORATION may claim an interest in the subject property

3

TDP FILE NO. 23-001886

by virtue of that certain Junior Lien dated May 11, 2022, and recorded on January 13, 2023, in Official Records Book 12551, Page 0852, of the Public Records of Polk County, Florida, but any interest so claimed is inferior to that of Plaintiff. A copy of the referenced Junior Lien is attached hereto as Exhibit "D."

12.   SUNNOVA SLA MANAGEMENT LLC may claim an interest in the subject property by virtue of that certain UCC Financing Statement recorded on July 22, 2022, in Official Records Book 12349, Page 1782, of the Public Records of Polk County, Florida, but any interest so claimed is inferior to that of Plaintiff. A copy of the referenced UCC Financing Statement is attached hereto as Exhibit "E."

13.   THE UNKNOWN TENANT IN POSSESSION may claim an interest in the subject property by virtue of occupancy or possession of the subject property, but any interest so claimed is inferior to that of Plaintiff.

14.   Plaintiff has been required to expend sums for a title search to ascertain the proper parties to this action and additional costs have been or may be incurred and will be due and owing at the time of the final judgment.

15.   Plaintiff has retained the services of Padgett Law Group, to represent it in this matter and is obligated to pay it a reasonable fee for its services.

**WHEREFORE**, Plaintiff respectfully requests:

1.   That this Court enter a judgment foreclosing the Defendants' interest in the property made the subject of the mortgage;

2.   That this Court award Plaintiff its costs and attorneys' fees in connection with this action as provided by the mortgage;

TDP FILE NO. 23-001886

4

3.   That this Court award to Plaintiff such additional relief as it may deem proper.

**FLA.R.CIV.P. 1.115(e)**

**VERIFICATION OF COMPLAINT**

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged therein

are true and correct to the best of my knowledge and belief.

Date: 11/28/2023

By: _Lauren Benning_
Name: Lauren Benning
Title: Vice President Document Execution

Cenlar FSB, Servicer for United Wholesale Mortgage, LLC F/K/A United Shore Financial Services, LLC D/B/A United Wholesale Mortgage, Plaintiff

Respectfully submitted this the ___1st___ day of ___Dec.___, 2023.

_Molly Carey_

PADGETT LAW GROUP
[ ] MOLLY CAREY, ESQ.
   Florida Bar # 100184
[ ] GINA VARGAS, ESQ.
   Florida Bar # 84149
[ ] HEATHER L. GRIFFITHS ESQ.
   Florida Bar # 91444
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
pagett@padgettlawgroup.com
Attorney for Plaintiff

Pursuant to the Fla. R. Jud. Admin. 2.516, the above signed counsel for Plaintiff designates attorney@padgettlaw.net as its primary e-mail address for service, in the above styled matter, of all pleadings and documents required to be served on the parties.

5

TDP FILE NO. 23-001886

# Exhibit C

xbrl-20250506.htm  **25**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

**CURRENT REPORT**
Pursuant to Section 13 or 15(d)
of the Securities Exchange Act of 1934

Date of report (Date of earliest event reported): **May 6, 2025**

# UWM Holdings Corporation
(Exact Name of Registrant as Specified in Charter)

| **Delaware** | **001-39189** | **84-2124167** |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification Number) |

**585 South Boulevard E.**

**Pontiac, Michigan**    **48341**

(Address of principal executive offices)    (Zip Code)

**(800) 981-8898**
(Registrant's telephone number, including area code)

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| ≪ 〈 〉 ≫ Stock, par value $0.0001 per share | **UWMC** | **New York Stock Exchange** |

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549
# FORM 10-Q

(Mark One)

☒   QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended March 31, 2025

OR

☐   TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number 001-39189

# UWM HOLDINGS CORPORATION

(Exact name of registrant as specified in its charter)

| **Delaware** | | **84-2124167** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | | (I.R.S. Employer Identification No.) |
| **585 South Boulevard E,** | **Pontiac,    MI** | **48341** |
| (Address of Principal Executive Offices) | | (Zip Code) |

**(800) 981-8898**

Registrant's telephone number, including area code

**N/A**

(Former name, former address and former fiscal year, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Class A Common Stock, par value $0.0001 per share | UWMC | New York Stock Exchange |
| Warrants, each warrant exercisable for one share of Class A Common Stock | UWMCWS | New York Stock Exchange |

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports); and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one)

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☒ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No ☒

As of May 2, 2025, the registrant had 201,418,441 shares of Class A common stock outstanding and 1,397,782,620 shares of Class D common stock outstanding.

Table of Contents

## Table of Contents

| Section Name | Page |
|---|---|
| PART I - FINANCIAL INFORMATION | |
| Item 1. Financial Statements | |
| Condensed Consolidated Balance Sheets | 2 |
| Condensed Consolidated Statements of Operations | 2 |
| Condensed Consolidated Statements of Changes in Equity | 3 |
| Condensed Consolidated Statements of Cash Flows | 4 |
| Notes to Condensed Consolidated Financial Statements | 5 |
| | 6 |
| Item 2. Management's Discussion and Analysis of Financial Condition and Results of Operations | 23 |
| Item 3. Quantitative and Qualitative Disclosures About Market Risk | 39 |
| Item 4. Controls and Procedures | 40 |
| | |
| PART II - OTHER INFORMATION | |
| Item 1. Legal Proceedings | 41 |
| Item 5. Other Information | 43 |
| Item 6. Exhibits | 43 |
| | |
| Signatures | 45 |

Table of Contents

**PART I**

**Item 1. Financial Statements**

### UWM HOLDINGS CORPORATION
### CONDENSED CONSOLIDATED BALANCE SHEETS
### (in thousands, except shares and per share amounts)

| | March 31, 2025 | December 31, 2024 |
|---|---|---|
| **Assets** | **(Unaudited)** | |
| Cash and cash equivalents (includes restricted cash of $16.1 million and $16.0 million, respectively) | $ 485,024 | $ 507,339 |
| Mortgage loans at fair value | 8,402,211 | 9,516,537 |
| Derivative assets | 43,958 | 99,964 |
| Investment securities at fair value, pledged | 102,982 | 103,013 |
| Accounts receivable, net | 472,299 | 417,955 |
| Mortgage servicing rights | 3,321,457 | 3,969,881 |
| Premises and equipment, net | 153,855 | 146,199 |
| Operating lease right-of-use asset (includes $91.2 million and $92.6 million, respectively, with related parties) | 92,450 | 93,730 |
| Finance lease right-of-use asset, net (includes $22.2 million and $22.7 million, respectively, with related parties) | 22,464 | 23,193 |
| Loans eligible for repurchase from Ginnie Mae | 750,769 | 641,554 |
| Other assets | 200,964 | 151,751 |
| **Total assets** | $ 14,048,433 | $ 15,671,116 |
| **Liabilities and equity** | | |
| Warehouse lines of credit | $ 7,573,139 | $ 8,697,744 |
| Derivative liabilities | 27,922 | 35,965 |
| Secured lines of credit | 250,000 | 500,000 |
| Borrowings against investment securities | 88,775 | 90,646 |
| Accounts payable, accrued expenses and other | 652,701 | 580,738 |
| Accrued distributions and dividends payable | 159,856 | 159,827 |
| Senior notes | 2,786,467 | 2,785,326 |
| Operating lease liability (includes $97.8 million and $99.2 million, respectively, with related parties) | 99,010 | 100,376 |
| Finance lease liability (includes $24.2 million and $24.6 million, respectively, with related parties) | 24,445 | 25,094 |
| Loans eligible for repurchase from Ginnie Mae | 750,769 | 641,554 |
| **Total liabilities** | 12,413,084 | 13,617,268 |
| **Equity** | | |
| Preferred stock, $0.0001 par value - 100,000,000 shares authorized, none issued and outstanding as of March 31, 2025 or December 31, 2024 | — | — |
| Class A common stock, $0.0001 par value - 4,000,000,000 shares authorized, 200,781,659 and 157,940,987 shares issued and outstanding as of March 31, 2025 and December 31, 2024, respectively | 20 | 16 |
| Class B common stock, $0.0001 par value - 1,700,000,000 shares authorized, none issued and outstanding as of March 31, 2025 or December 31, 2024 | — | — |
| Class C common stock, $0.0001 par value - 1,700,000,000 shares authorized, none issued and outstanding as of March 31, 2025 or December 31, 2024 | — | — |
| Class D common stock, $0.0001 par value - 1,700,000,000 shares authorized, 1,397,782,620 and 1,440,332,098 shares issued and outstanding as of March 31, 2025 and December 31, 2024, respectively | 140 | 144 |
| Additional paid-in capital | 4,298 | 3,523 |
| Retained earnings | 160,407 | 157,837 |
| Non-controlling interest | 1,470,484 | 1,892,328 |
| **Total equity** | 1,635,349 | 2,053,848 |
| **Total liabilities and equity** | $ 14,048,433 | $ 15,671,116 |

See accompanying Notes to the Condensed Consolidated Financial Statements.

Document

EX-4.9 2 uwm-fullyexecutedindenture.htm EX-4.9

*Execution Version*

**UNITED WHOLESALE MORTGAGE, LLC,**
as Issuer

and

**U.S. BANK NATIONAL ASSOCIATION,**
as Trustee

Indenture

**Dated as of November 22, 2021**

**5.750% Senior Notes Due 2027**

## DEFINITIONS AND INCORPORATION BY REFERENCE

| Section 1.01 | Definitions | |
| Section 1.02 | Rules of Construction | 1 |
| Section 1.03 | Limited Condition Transactions | 33 |

## ARTICLE 2

### THE NOTES

| Section 2.01 | Form, Dating and Denominations; Legends | 34 |
| Section 2.02 | Execution and Authentication; Additional Notes | 35 |
| Section 2.03 | Registrar, Paying Agent and Authenticating Agent; Paying Agent to Hold Money in Trust | 36 |
| Section 2.04 | Replacement Notes | 37 |
| Section 2.05 | Outstanding Notes | 37 |
| Section 2.06 | Temporary Notes | 37 |
| Section 2.07 | Cancellation | 38 |
| Section 2.08 | CUSIP and CINS Numbers | 38 |
| Section 2.09 | Registration, Transfer and Exchange | 38 |
| Section 2.10 | Restrictions on Transfer and Exchange | 38 |
| Section 2.11 | Temporary Offshore Global Notes | 40 |
| | | 41 |

## ARTICLE 3

### REDEMPTION; OFFER TO PURCHASE

| Section 3.01 | Optional Redemption | |
| Section 3.02 | Redemption with Proceeds of Equity Offering | 42 |
| Section 3.03 | Method and Effect of Redemption | 42 |
| Section 3.04 | Offer to Purchase | 43 |
| | | 44 |

## ARTICLE 4

### COVENANTS

| Section 4.01 | Payment of Notes | |
| Section 4.02 | Maintenance of Office or Agency | 45 |
| Section 4.03 | Existence | 46 |
| Section 4.04 | Payment of Taxes and other Claims | 46 |
| Section 4.05 | Maintenance of Properties and Insurance | 46 |
| Section 4.06 | Limitation on Debt and Disqualified or Preferred Stock | 46 |
| Section 4.07 | Limitation on Restricted Payments | 47 |
| Section 4.08 | Limitation on Liens | 51 |
| Section 4.09 | Limitation on Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries | 54 |
| Section 4.10 | Guaranties by Restricted Subsidiaries | 54 |
| Section 4.11 | Repurchase of Notes Upon a Change of Control | 56 |
| Section 4.12 | Limitation on Asset Sales | 56 |
| Section 4.13 | Limitation on Transactions with Affiliates | 56 |
| Section 4.14 | [Reserved.] | 58 |
| Section 4.15 | Designation of Restricted and Unrestricted Subsidiaries | 61 |
| | | 61 |

Page

Section 4.16   Financial Reports .......................................................................................................................... 62
Section 4.17   Reports to Trustee ......................................................................................................................... 64
Section 4.18   Suspension Of Certain Covenants ................................................................................................ 64

ARTICLE 5

CONSOLIDATION, MERGER OR SALE OF ASSETS

Section 5.01   Consolidation, Merger or Sale of Assets by the Company; No Lease of All or Substantially All Assets ..... 65
Section 5.02   Consolidation, Merger or Sale of Assets by a Guarantor ............................................................. 66

ARTICLE 6

DEFAULT AND REMEDIES

Section 6.01   Events of Default .......................................................................................................................... 67
Section 6.02   Acceleration .................................................................................................................................. 68
Section 6.03   Other Remedies ............................................................................................................................ 69
Section 6.04   Waiver of Past Defaults ................................................................................................................ 69
Section 6.05   Control by Majority ...................................................................................................................... 69
Section 6.06   Limitation on Suits ....................................................................................................................... 69
Section 6.07   Rights of Holders to Receive Payment .......................................................................................... 69
Section 6.08   Collection Suit by Trustee ............................................................................................................. 69
Section 6.09   Trustee May File Proofs of Claim ................................................................................................. 70
Section 6.10   Priorities ....................................................................................................................................... 70
Section 6.11   Restoration of Rights and Remedies .............................................................................................. 70
Section 6.12   Undertaking for Costs ................................................................................................................... 70
Section 6.13   Rights and Remedies Cumulative .................................................................................................. 70
Section 6.14   Delay or Omission Not Waiver ...................................................................................................... 71
Section 6.15   Waiver of Stay, Extension or Usury Laws ...................................................................................... 71

ARTICLE 7

THE TRUSTEE

Section 7.01   General .......................................................................................................................................... 71
Section 7.02   Certain Rights of Trustee .............................................................................................................. 71
Section 7.03   Individual Rights of Trustee .......................................................................................................... 73
Section 7.04   Trustee's Disclaimer ...................................................................................................................... 73
Section 7.05   Notice of Default ........................................................................................................................... 73
Section 7.06   [Reserved] ..................................................................................................................................... 74
Section 7.07   Compensation and Indemnity ........................................................................................................ 74
Section 7.08   Replacement of Trustee ................................................................................................................. 74
Section 7.09   Successor Trustee by Merger ......................................................................................................... 75
Section 7.10   Eligibility ...................................................................................................................................... 75
Section 7.11   Money Held in Trust ...................................................................................................................... 75

ARTICLE 8

DEFEASANCE AND DISCHARGE

Section 8.01   Discharge of Company's Obligations ............................................................................................ 75
Section 8.02   Legal Defeasance .......................................................................................................................... 76
Section 8.03   Covenant Defeasance .................................................................................................................... 77
Section 8.04   Application of Trust Money ........................................................................................................... 77
Section 8.05   Repayment to Company ................................................................................................................. 77

Exhibit D



December 21, 2021, or if that day is a weekend or holiday, the following business day. Our acceptance of one or more partial payments will not prevent us from accelerating the indebtedness if you do not cure the default in full.

Failure to pay the Cure Amount on or before December 21, 2021, may result in: 1) acceleration of all sums secured by the Mortgage to be immediately due and payable and 2) foreclosure by judicial proceedings and sale of the mortgaged property. If you fail to pay the Cure Amount by December 21, 2021, we may, at our option, require immediate payment of all sums secured by the Mortgage without further demand, and foreclose the Mortgage by judicial proceedings, invoke the power of sale, assent to decree, if applicable, and/or any other remedies permitted by applicable law.

A deficiency judgment may be pursued following foreclosure proceedings according to the terms of your loan documents and as permitted by law. Please be advised that if your debt was discharged in bankruptcy, a deficiency judgment will not be pursued.

You have the right to reinstate the loan after acceleration and to assert in the foreclosure proceedings the non-existence of a default or any other defense to acceleration and foreclosure.

The following amounts, if any, are also due, however, they are not necessary to reinstate your loan:

Recoverable Corporate Advance   $        .00
Escrow Advance                  $    1016.19
Other Non-Secured Amounts       $        .00
Total                           $    1016.19

If you have any questions or need additional information, please contact us at 866-640-6914.

This communication is from a debt collector. Any information obtained can be used for the purpose of collecting a debt. However, if you are in an active bankruptcy case or your debt has been discharged in bankruptcy, this notice is for informational purposes only and is not a demand for payment or an attempt to collect a debt for which your personal liability has been discharged in bankruptcy.

AM006 062 OP1 JO



**UNITED WHOLESALE MORTGAGE**

855-753-6201 | uwm.loanadministration.com



November 16, 2021

Hours of Operation:
Customer Service: Monday - Friday, 8:30 a.m. to 8:30 p.m. ET
Collections Dept.: Monday - Friday, 8:00 AM to 8:00 PM ET

Carmelo Quirindongo
256 Grouper CT
Kissimmee FL 34759

Qualified Written Requests, notifications
of error, or requests for information
concerning your loan must be directed to:
PO Box 77423, Ewing, NJ 08628

RE: Loan Number:
Property Address: 256 Grouper Ct
                  Kissimmee FL 34759

**NOTICE**

This notice is to inform you that you have defaulted in your obligations
under the terms of a Note and Mortgage on the mortgaged property listed
above, and to advise you of certain rights you have under the loan
documents. For the purposes of this notice, the term Note means a mortgage
note, bond or similar agreement to repay a loan and the term Mortgage means
a mortgage, a deed of trust, security deed or other similar security
instrument that secures the Note. If you did not execute the Note or assume
the subject loan, this letter is not an attempt to collect the debt from
you.

The default consists of your failure to pay the monthly mortgage payments
due beginning October 01, 2021, until the present. The total amount due to
cure the loan may also include sums for unpaid escrow deposits and late
charges. The total amount due as of the date of this letter is $ 2512.18.

You have the right to cure the default on or before the date identified
below by sending the required amount of $ 2512.18 to:

    Loan Servicing
    PO Box 77407
    Ewing, NJ 08618

IF YOUR NEXT PAYMENT DUE DATE OCCURS ON OR BEFORE YOU SUBMIT THE TOTAL
AMOUNT DUE TO CURE THE DEFAULT, the default will not be cured unless your
next payment is made in addition to the Total Amount Due.  You are not
required to pay your next monthly payment in advance.

The Cure Amount must be received at our office on or before

AM006 062 OP1 JO

5948P0 320803651 892802 03064608                    United Wholesale Mortgage is a proud division of United Shore Financial Services, LLC. NMLS # 3038